**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAYWANA PALMER, as Administrator | ) | |
| of the Estate of ROMELLO PALMER, | ) | |
| deceased, | ) | |
| | ) | Case No.  2018 C 6054 |
| Plaintiff, | ) | |
| v. | ) | Judge:  Robert W. Gettleman |
| | ) | |
| THE CITY OF CHICAGO, ET AL. | ) | Magistrate:  Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS
COUNTS IV, VII, VIII and IX OF PLAINTIFF'S COMPLAINT**

Defendant City of Chicago ("City"), by its attorney, Edward N. Siskel, Corporation

Counsel of the City of Chicago, and Mark C. Haines, Assistant Corporation Counsel, respectfully

moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and 12(f), to

dismiss Counts IV, VII, VIII, and IX of Plaintiff's Complaint, with prejudice. In support of this

Motion, the City states the following:

**BACKGROUND**

Plaintiff's Complaint alleges that he was stopped by Defendant Officers Kenneth Moranz

and Nicholas Nunez on September 4, 2017. ECF #1, ¶¶ 10-12. Plaintiff fell to the ground, was

having difficulty breathing and looked sick or under the influence of drugs or alcohol. *Id*. at ¶ 12.

Despite the fact that Plaintiff was losing consciousness and in need of medical assistance, Officers

Moranz and Nunez ignored Plaintiff's request for help and did not provide him any medical

assistance. *Id*. at ¶¶ 13-14, 17-19. Instead, the officers placed Plaintiff into handcuffs and left him

lying on the ground unconscious. *Id*. at ¶¶ 17, 21. It was not until back-up officers arrived that the

handcuffs were taken off of Plaintiff, and not until some point later that other officers arrived on

the scene and called for medical assistance. *Id*. at ¶¶ 22, 25. The paramedics and firefighters who arrived at the scene did not provide Plaintiff with immediate medical assistance and, as a result, Plaintiff suffered pain, emotional distress, and ultimately the loss of his life. *Id*. at ¶¶ 27-29.

Plaintiff's Complaint contains 11 counts: against the named officers, Plaintiff claims failure to provide medical attention (Count I), deliberate indifference to serious medical need (Count II), and due process violation (Count III); against the City, Plaintiff alleges a *Monell* claim, (Count IV), negligence (Count VII), willful and wanton misconduct (Count VIII), indemnity (Count X), and *respondeat superior* liability for Plaintiff's state-law claims (Count XI); and against both the City and the named officers, Plaintiff brings claims for negligent and/or willful and wanton misconduct under the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq*., (Count V), and the Illinois Survival Act, 755 ILCS 5/27-6. ECF #1, ¶¶ 30-93.

The City moves to dismiss Plaintiff's *Monell* claim (Count IV) on the ground that it is insufficiently pled and consists solely of conclusory allegations. The City also moves to dismiss Plaintiff's failure to train and supervise claim (Count IX) on the ground that it is duplicative of Plaintiff's claim for *respondeat superior* liability against the City (Count XI). Finally, the City moves to dismiss Plaintiff's negligence (Count VII) and willful and wanton (Count VIII) claims as she lacks standing to bring such claims and/or they are duplicative of her claims brought pursuant to the Wrongful Death Act (Count V) and Survival Act (VI).

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Procedure is a mechanism for testing the sufficiency of the complaint. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir.1990); Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege factual allegations constituting a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

2

plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although not required to plead detailed factual allegations, the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555. While all well-pleaded factual allegations are entitled to a presumption of truth, this tenet does not apply to legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79. A complaint should be dismissed where the theory of liability is predicated upon a recital of a cause of action's elements devoid of further factual enhancement. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Rule 12(b)(1) of the Federal Rules of Procedure governs dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The U.S. Constitution limits federal courts to deciding actual cases and controversies. U.S. Const., Art. III, Sec. 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). Inherent in the "case or controversy" requirement is the doctrine of standing, which requires the plaintiff to have "personal injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751.

Finally, Rule 12(f) of the Federal Rules of Procedure allows courts to strike materials from pleadings that are redundant. Fed. R. Civ. P. 12(f). Claims are duplicative and subject to being stricken if they are based upon the same operative facts and allege the same injury. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004).

**ARGUMENT**

I.      **This Court Should Dismiss Plaintiff's *Monell* Claim Because it is Insufficiently Pled.**

In Count IV of the Complaint, Plaintiff makes the conclusory allegation that the named individual officers' alleged misconduct was caused in part by the following customs, policies and practices of the City:

a) the willful, wanton, and deliberately indifferent failure to train police officers not to handcuff and leave prone those individuals who are unconscious or nearly unconscious;

b) the willful, wanton, and deliberately indifferent failure to train police officers not to handcuff and leave on the ground those individuals who are having severe difficulty breathing;

c) the willful, wanton, and deliberately indifferent failure to train police officers to immediately call for medical assistance upon seeing an individual with extreme difficulty breathing and/or loss of consciousness;

d) the willful, wanton, and deliberately indifferent failure to train police officers to immediately call for medical assistance upon seeing an unconscious individual;

e) the willful, wanton, and deliberately indifferent failure to train police officers to immediately call for medical assistance upon seeing an individual who appears under the influence of a controlled substance or alcohol;

f) the willful, wanton, and deliberately indifferent failure to train police officers to immediately call for medical assistance upon seeing an individual who cannot communicate, stand up or move;

g) the willful, wanton, and deliberately indifferent failure to train police officers to provide basic assistance upon seeing an individual who cannot communicate, stand up or move;

h) a code of silence whereby officers refuse to report the unconstitutional misconduct of other officers, including the conduct alleged in this Complaint; and

i) the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in regards to unconstitutional misconduct.

ECF #1, ¶¶ 49-50. Plaintiff then asserts, without factual support, that the above policies, practices and customs are so widespread and prevalent within the City of Chicago so as to put the City's policy makers on actual or constructive notice of such policies. *Id*. at ¶ 51. Further, according to Plaintiff, the City's policy makers acted willfully, wantonly, and with deliberate indifference towards Plaintiff's constitutional rights by accepting, maintaining and encouraging the above policies and practices. *Id*. at ¶ 52. Finally, Plaintiff alleges that by acting in such a manner, the

4

City's policy makers approved, encouraged, and caused the constitutional violations suffered by Plaintiff's Decedent and thereby proximately caused his fatal injuries. *Id*. at ¶¶ 53-54. However, for the following reasons, Plaintiff has failed to sufficiently plead a *Monell* claim, and Count IV of the Complaint should be dismissed.

*Monell* claims are subject to the pleading standards set out by the United States Supreme Court in *Twombly* and *Iqbal*. *McCauley v. City of Chicago*, 671 F. 3d 611, 615 (7th Cir. 2011); *see also Johnson, v. Cook County Sheriff's Office*, 2018 WL 2193235, at *2-3 (N.D. Ill May 5, 2018) (Tharp, J.) (applying *Iqbal* and *Twombly* to review the defendant's motion to dismiss the plaintiff's *Monell* claim). Thus, when reviewing the sufficiency of any claim in a complaint, including a *Monell* claim, the Court must disregard legal conclusions and conclusory or boilerplate allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.' " *McCauley*, 671 F. 3d at 616 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff must "provid[e] some specific facts to support the legal claims asserted in the complaint." *McCauley*, 671 F. 3d at 616 (internal quotations omitted). Moreover, "[t]he '[f]actual allegations must be enough to raise the right to relief above the speculative level.' " *Id*. (quoting *Twombly*, 550 U.S. at 555). Applying these standards, Plaintiff has failed to plead sufficient factual matter to state a *Monell* claim.

It is well-settled that a municipality may not be held liable under §1983 based on a theory of *respondeat superior* or vicarious liability but, instead, may only be liable for constitutional violations caused by the municipality itself through its own policy or custom. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (2007). To sufficiently state such a *Monell* claim, Plaintiff must plead factual content that allows the Court to draw a reasonable inference that: "(1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation." *McCauley*, 671 F.3d at 615. In this case, Defendants' motion is directed at this

second element. To satisfy that element, a plaintiff must establish that his constitutional violation was "caused by (1) an express municipal policy; or (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Milestone v. City of Monroe*, *Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (internal quotations omitted).

To sufficiently plead a widespread practice claim, Plaintiff must allege "facts tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). A municipality can be found liable under a theory that it failed to adequately train its officers "only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact." *Jenkins*, 487 F.3d 482 at 492 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is more than "simple or even heightened negligence" and will be found only when that indifference can be considered a municipal policy or custom. *Jenkins*, 487 F.3d 482 at 492 (internal quotations omitted). This may arise in two circumstances. "First, a municipality acts with deliberate indifference when, 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' that the deficiency exhibits deliberate indifference on the part of municipal policymakers." *Id*. (quoting *City of Canton*, 489 U.S. at 390). Alternatively, courts "may find deliberate indifference when a repeated pattern of constitutional violations makes 'the need for further training . . . plainly obvious to the city policymakers.' " *Id*. (quoting *City of Canton*, 489 U.S. at 390, n. 10).

Applying these standards, Plaintiff's *Monell* claim must be dismissed because it consists entirely of conclusory and boilerplate allegations that merely track the elements of a *Monell* claim

based on the failure to train. Plaintiff's *Monell* claim lacks any factual allegations upon which a plausible inference could be drawn that the alleged practices actually exist and that those practices caused the alleged underlying constitutional violations. Under *McCauley*, *Iqbal* and *Twombly*, Plaintiff's rote and conclusory allegations need not be accepted as true by this Court and fail to state a *Monell* claim that is plausible on its face. To allow Plaintiff to proceed based solely upon the generalized allegations in his *Monell* claim would be tantamount to allowing Plaintiff to go on a "fishing expedition" in hopes of finding evidence to support his allegations. *See, e.g.*, *Armour v. Country Club Hills*, 2014 WL 63850, at *7 (N.D. Ill. Jan. 8, 2014) (Gottschall, J.) (dismissing the plaintiff's *Monell* claim that consisted of generalized allegations and observing that discovery related to such broad allegations would be "boundless" and the "epitome of a fishing expedition"); *Kowalski v. Cnty. of DuPage*, 2013 WL 4027046 (N.D. Ill. Aug. 7, 2012) (Kocoras, J.) (plaintiff cannot provide merely boilerplate *Monell* allegations in order to proceed to discovery in hope of turning up evidence to support his accusations); *Iqbal*, 556 U.S. at 678-79 (stating that Federal Rule of Civil Procedure 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

In the wake of *Iqbal* and *McCauley*, a number of courts in this district have dismissed similarly deficient *Monell* claims. *E.g.*, *Henderson v. City of Chicago*, 2015 WL 1954464, at *2 (N.D. Ill. Apr. 26, 2015) (Kendall, J.) (dismissing *Monell* claims because "the conclusory allegation that those events were part of a pattern is insufficient to establish the existence of a widespread practice"); *Starks v. City of Waukegan*, 2013 WL 2243089 (N.D. Ill. May 21, 2013) (dismissing *Monell* claim because it was "nothing more than conclusory boilerplate"); *Echezarreta v. Kemmeren*, 2013 WL 4080293 (N.D. Ill. Aug. 13, 2013) (dismissing *Monell* claims because plaintiff did "not assert any additional facts to elucidate any 'customs' or 'practices'" but left the

"claims unsupported and speculative in nature"); *Sheppard v. Village of Glendale Heights*, 2011 WL 6102012 (N.D. Ill. Dec. 5, 2011) (dismissing a plaintiff's *Monell* claim because "boilerplate allegations of a municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient"); *Annan v. Village of Romeoville*, 2013 WL 673484 (N.D. Ill. Feb. 25, 2013) (dismissing a plaintiff's *Monell* claims for "fail[ing] to allege any facts that would support the existence of a municipal policy); *Adedeji v. Cobble*, 2013 WL 449592 (N.D. Ill. Feb. 5, 2013) (finding that a plaintiff's allegations concerning the underlying case failed to plausibly allege liability under *Monell*).

Plaintiff's conclusory allegations must be disregarded by this Court when it considers whether Plaintiff has sufficiently pled a *Monell* claim. *See McCauley*, 671 F. 3d at 616. After doing so, Plaintiff is left with just the allegations related to the individual defendant officers. However, Plaintiff's reliance upon the alleged misconduct of the individual officers in this case to establish a pattern and practice is an improper attempt to assert *respondeat superior* liability against the City. *See, e.g.*, *City of Oklahoma v. Tuttle*, 471 U.S. 808, 831 (1985) ("[t]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*"); *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (holding that the specific actions of government employees in the plaintiff's case alone, without more, did not create the reasonable inference that a widespread practice existed).

The lack of factual specificity in Plaintiff's Complaint is even more problematic because this case involves relatively complicated subject matter. *See McCauley* 671 F.3d at 616-17 (stating that the required level of factual specificity rises with the level of the claim). To establish *Monell* liability based on evidence of inadequate training or supervision, as Plaintiff attempts in the instant

case, he must present proof of "deliberate indifference" on the part of the City. *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006, 1029-30 (7th Cir.2006) (citing *City of* Canton, 489 U.S. at 388); *see also Connick v. Thompson*, 563 U.S. 51 (2011). Courts in this district have required a relatively high level of factual specificity at the pleading stage in order to make failure to train and supervise claims facially plausible. *See Winchester v. Marketti*, 2012 WL 207637 (N.D.Ill. June 8, 2012) (stating that given the nebulous nature of failure to train claims, "it would seem that a relatively high level of factual specificity is required at the pleading stage to make a failure to train claim facially plausible"); *see also Manning v. Sweitzer*, 891 F.Supp.2d 961, 969 (N.D. Ill. July 2, 2012) (holding that a plaintiff failed to allege a plausible failure to train claim either under the typical standard or one requiring a greater degree of specificity); *Adams v. Tortorello*, 2013 WL 4476626 (N.D. Ill. Aug. 20, 2013) (dismissing a failure to train, supervise and equip claim with prejudice in light of *Connick*).

Plaintiff's Complaint, however, contains nothing more than conclusory allegations that lack any factual support. This is not enough. A plaintiff cannot simply allege the existence of a policy or practice, (*Iqbal*, 556 U.S. at 678), or that a municipality knew of and tacitly supported these policies or practices. *Jones v. Navia*, 2010 WL 4878869, at *5 (N.D. Ill. Nov. 23, 2010). Plaintiff "must do more than merely parrot the language of *Monell* to state a claim." *Johnson v. Johnnie*, 2011 WL 2020686, at *3 (S.D. Ill. May 24, 2011) (citing *Hamrick v. Lewis*, 515 F.Supp. 983, 986 (N.D. Ill. 1981)). Each basis for Plaintiff's *Monell* claim in Count IV is utterly devoid of factual support and therefore must be dismissed.

Plaintiff's "code of silence" claim should be dismissed for the additional reason that it is too attenuated. The Seventh Circuit addressed a similar claim in *Johnson v. Cook County*, 2013 WL 2005236 (7th Cir. 2013). In that case, an inmate sought to hold Cook County liable for a sexual

assault by one of its employees under the theory that a so-called "code of silence" existed where Cook County "encouraged the suppression of complaints of misconduct to cover up inadequacies in the supervision and treatment of detainees, thus maintaining an atmosphere and climate where inmates are subjected to an unreasonable risk of violence and sexual violence." *Id*. at *3. The Seventh Circuit held that the *Monell* claim was properly dismissed at the pleading stage because the allegations in the complaint did not, and could not, show that the alleged practice was the moving force behind the injury because the link between the cause alleged and the harm that occurred is much too attenuated. *Id*. at *3-4. The court went on to say "[w]e are not convinced that any set of facts could support Johnson's allegations that Hill sexually assaulted Johnson as a direct result of a 'widespread custom or policy.'" *Id*. at *4.

The reasoning applied by the Seventh Circuit in *Johnson* is equally applicable to this case. Here, Plaintiff attempts to allege that through the City's passivity and inaction, a code of silence has developed among members of the Chicago Police Department. ECF #1, ¶ 50(i). This alleged code of silence is far more attenuated than the active suppression of complaints in *Johnson*. As in *Johnson*, there simply is no set of facts in this case that would enable Plaintiff to show that a code of silence (assuming one existed) was the moving force behind any of the alleged unconstitutional behavior. Any proposed link would be much too remote and must be dismissed. For these reasons, this Court should dismiss Count IV against the City.

## II. Plaintiff's Breach of Duty to Train and Supervise (Count IX) Should be Dismissed Because it is Duplicative of Plaintiff's *Respondeat Superior* Claim Against the City (Count XI).

Plaintiff's attempted independent claim against the City for breach of its duty to train and supervise (Count IX) is duplicative of Plaintiff's claim for *respondeat superior* liability against the City (Count XI). Accordingly, Count IX claim should be dismissed.

It is well-established in Illinois courts that once an employer is imputed liability under the *respondeat superior* theory, any cause of action based on the employer's supervision, training or entrustment of that employee is duplicative and unnecessary. *See Thompson v. N.E. Ill. Regl. Commuter R.R. Corp.*, 367 Ill. App. 3d 373, 375-76 (Ill. App. 1st 2006), citing *Gant v. L.U. Transport, Inc.*, 331 Ill. App. 3d 924, 929 (Ill. App. 1st 2002); *see also Farnik, et al. v. Chicago Police Department, et al.*, 14 CV 3899, Docket No. 63 (Lefkow, J., July 13, 2015) (dismissing a negligent supervision and training claim as duplicative of a *respondeat superior* claim). An employer could be prejudiced, since "[t]o allow both causes of action to stand would allow the jury to assess or apportion the principal's liability twice." *Thompson,* 367 Ill. App. 3d at 376. However, the fault of one party cannot be assessed multiple times. *Gant*, 331 Ill. App. 3d at 930.

Here, Plaintiff alleges that his injuries are the result of the actions of the individual officers in addition to the City failing to train and supervise those officers in the following ways:

  a) Interacting with individuals in need of immediate medical assistance;
  b)  Handcuffing individuals who are having difficulty breathing, semi-conscious, unable to communicate, under the influence of alcohol or a controlled substance; and/or prone on the ground;
  c) Interacting with individuals who cannot move or communicate;
  d) Calling for immediate emergency medical assistance; and
  e) Providing emergency medical assistance to individuals in police custody.

ECF #1, ¶80. If the jury finds the individually named officers liable as to any of the claims alleged against them, the City is legally obligated to indemnify them for any compensatory damages pursuant to state law as pled in Plaintiff's *respondeat superior* claim at Count XI.

Indeed, under *respondeat superior* theory, the individually named officers' conduct is imputed onto the City and thus results in damages being levied against the City. 745 ILCS 10/2-901. Simply put, Plaintiff alleges a single, indivisible injury caused by a single event which occurred on September 4, 2017. Liability among the Defendants in this case – whether the individual officers or their employer, the City – is joint and several. *See Watts v. Laurent*, 774 F.2d

168, 180 (7th Cir. 1985); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1386-87 (7th Cir. 1984). Therefore, "the jury should not be invited to attribute different injuries to different claims…or assess damages separately against particular defendants." *Thomas v. Cook Cty. Sheriff's Dep't.*, 604 F.3d 293, 315 (7th Cir. 2010). All of Plaintiff's state law torts claims in this case seek compensation for the events surrounding the decedent's interaction with the individual officers, and while any damages resulting from this interaction may be measured by category, such as non-economic damages (*e.g.* pain and suffering), the jury cannot assign "percentages among the parties found to be causally responsible for that injury." *Id*. Allowing the jury in this case to assess damages by defendant "invites duplication of damages and is especially problematic where liability is joint and several." *Id*. Although courts have allowed willful and wanton entrustment claims to proceed in some cases, those cases are distinguishable to the case at hand. In those cases, the court allowed that claim to proceed on the ground that the employee and employer did not share the same level of culpability; the employee may only be negligent, although the employer must be willful and wanton. *See Lockett v. Bi-State Transit Authority*, 94 Ill. 2d 66, 73 (1983). Here, the individual Officers can be liable to Plaintiff on her wrongful death and survival action claims only if they are found to be willful and wanton. 745 ILCS 10/2-202.

As explained by the court in *Gant* and those cases that follow, when an employer has admitted that its agent is acting within the scope of his employment, the employer is then liable for any damages awarded to plaintiff based on the agent's actions. *Gant*, 331 Ill. App. 3d at 928-30. Allowing a separate cause of action against the employer based solely on its training or supervision of that employee is prejudicial to the employer and runs the risk of double recovery. *See id.* Moreover, district courts are given a great deal of latitude and discretion to dismiss duplicative claims. *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) (Castillo,

J.) (citing *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). Therefore, to the extent Counts IX contains an independent claim against the City for an allegedly willful and wanton breach of duty to train and supervise, such claim should be dismissed as duplicative of the *respondeat superior* claim Plaintiff advances in Count XI.

### III.    Counts VII and VIII Should be Dismissed as Duplicative and/or Because Plaintiff Lacks Standing to Bring these Claims.

At Count V of her Complaint, Plaintiff, as administer of the estate of the Decedent, brings a claim against the individual defendants and the City pursuant to the Illinois Wrongful Death Act (740 ILCS 180/2), for the losses suffered by the survivors of the Decedent as a result of the alleged negligent and/or willful and wanton conduct of individual officers. ECF #1. At Count VI, Plaintiff brings a claim against the individual defendants and the City pursuant to the Illinois Survival Act (755 ILCS 5/27-6) for the pain and suffering experienced by Decedent before his death, as a result of the alleged negligent and/or willful and wanton conduct of the individual officers. ECF #1. And then at Counts VII and VIII, respectively, Plaintiff attempts to bring additional claims against the City for negligent and willful wanton conduct of the individual officers that resulted in the death of the Decedent. ECF #1. Not only are Counts VII and VIII duplicative of Counts V and VI, but more importantly, Plaintiff has no standing to pursue such claims other than pursuant to statutory permission, such as that provided by the Wrongful Death Act and the Survival Act. Where the plaintiff does not have standing, the federal court may not hear the case and must dismiss it for lack of subject-matter jurisdiction. *Valley Forge Christian Coll. V. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982).

The U.S. Constitution limits federal courts to deciding actual cases and controversies. U.S. Const., Art. III, Sec. 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). Inherent in the "case or controversy" requirement is the doctrine of standing, which requires the plaintiff to have "personal

13

injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751. The Wrongful Death Act, allows the representative of a person who has dies because of the wrongful act or negligence of another to sue on behalf of the decedent's heirs. 740 ILCS 180/2 *et seq*. Because the Wrongful Death Act is in derogation of common law, it must be strictly construed. *Forthenberry v. Franciscan Sisters Health Care Corp.*, 156 Ill. App. 3d 634 (4th Dist. 1987); *Matter of Edwards' Estate*, 106 Ill. App. 3d 635 (2d Dist. 1982).

Similarly, the Survival Act does not create a separate cause of action, but "is merely the conduit through which a cause of action is transferred to the estate representative." *Crum v. Health Alliance-Midwest, Inc*., 47 F. Supp. 2d 1013, 1016 (C.D. Ill. 1999); *Natl. Bank of Bloomington v. Norfolk & W. Ry. Co*., 73 Ill. 2d 160 (1978); *see* 755 ILCS 5/27-6. The Survival Act preserves a cause of action that accrued and existed before the decedent's death. 755 ILCS 5/27-6; *Myers v. Heritage Enter.*, 332 Ill. App. 3d 514 (2002); *Froud v. Celotex Corp*., 98 Ill. 2d 324, 334 (1983). A plaintiff has standing to bring a survival a claim only when appointed as executor or administrator of the decedent's estate under the Illinois Probate Act. 755 ILCS 5/9-4.

Plaintiff was appointed as administer of the estate of the Decedent, and therefore allowed to pursue claims through the Wrongful Death and Survival Acts. Plaintiff has no standing to pursue a separate claim for negligence and/or willful and wanton conduct outside of these Acts. Moreover, to the extent Plaintiff alleges separate claims for negligence and/or willful and wanton conduct in addition to claims brought under the Wrongful Death and Survival Acts based on the same conduct, these counts are duplicative and warrant being stricken. Therefore, the City moves the Court to strike and/or dismiss with prejudice Counts VII and VIII of Plaintiff's Complaint.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(6), and (f), the City respectfully requests that this Court dismiss Counts IV, VII, VIII, and IX of Plaintiff's Complaint, to stay discovery on those counts pending the Court's ruling on this Motion, and for any other relief that this Court deems just.

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago

By:    _/s/ Mark Haines_
         Mark Haines
         Assistant Corporation Counsel

Julie Murphy, Supervising Assistant Corporation Counsel
Gregory Beck, Assistant Corporation Counsel
Mark Haines, Assistant Corporation Counsel
City of Chicago, Department of Law
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-3982
Atty. No. 6287914